**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

TC ENTERTAINMENT, LLC
615 Fallsway, Baltimore
Baltimore, Maryland, 21202,

                        Plaintiff,

          v.                           Civil Action No.

MAYOR AND CITY COUNCIL
OF BALTIMORE
201 East Baltimore Street
Baltimore, MD 21202,

                        Defendant.

## COMPLAINT

Plaintiff TC ENTERTAINMENT, LLC, by and through its attorneys, Joshua Insley and

Saller, Lord, Ernstberger & Insley, and Ken C. Gauvey and Law Practice of Ken C. Gauvey, hereby

files this Complaint against the Defendant MAYOR AND CITY COUNCIL OF BALTIMORE

who implemented Executive Order dated February 17, 2021, and in support thereof, states as

follows:

## INTRODUCTION

1.  This case seeks to protect and vindicate fundamental constitutional rights. It is a civil

rights action brought under the First Amendment to the United States Constitution, challenging

Defendant's restriction of Plaintiff's right to freedom of speech. Defendant has adopted an

Executive Order (hereinafter "EO"), that operates as a prior restraint on Plaintiff's speech,

prohibiting Plaintiff from offering entertainment in the form of live performances based on

Defendant's belief that by implementing such prohibitions, lives will be saved and further exposure to the COVID-19 virus will be minimized.

2.     Plaintiff seeks to prohibit Defendants EO dated February 17, 2021. The EO specifically targets adult entertainment venues and prohibits live entertainment at those venues. All other live entertainment in the City has been approved except adult entertainment venues. The EO prohibition is not content neutral and therefore strict scrutiny applies. Even if the prohibition was content neutral, the prohibition is not narrowly tailored to serve any legitimate governmental interest.

## PARTIES

3.     Plaintiff, TC ENTERTAINMENT, LLC (hereinafter "Plaintiff"), is a registered business of good standing with the State of Maryland, and at all times relevant to this action, was located at 615 Fallsway, in City of Baltimore, State of Maryland.

4.     Defendant MAYOR AND CITY COUNCIL OF BALTIMORE (hereinafter "Defendant"), at all times relevant to this action, served as the governing executive and legislative branches of the City of Baltimore, State of Maryland.

## JURISDICTION AND VENUE

5.     Based on Plaintiff's claims under the First Amendment, this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), and 28 U.S.C. § 1343(a)(4).

## FACTS COMMON TO ALL COUNTS

6.     On March 5, 2020, Governor Larry Hogan issued a State of Emergency due to the rapid spread of Covid-19.

7.     On March 16, 2020, Governor Larry Hogan issued EO 20-03-16-01

which mandated the closing of all restaurants and bars as well as any and all live performances in the State of Maryland.

8.    On May 15, 2020, Mayor Jack Young issued the first EO for Baltimore City mandating the continued prohibition of on premises dining for restaurants and bars and the continued closing of all live performances.

9.    On August 7, 2020, Mayor Jack Young issued the first EO permitting the limited return to indoor dining.

10.    Multiple EOs have since been issued by both Governor Larry Hogan, former Mayor Jack Young, and current Mayor Brandon Scott in response to the latest data at their disposal to control the spread of Covid-19.

11.    On November 10, 2020, former Mayor Jack Young issued an EO allowing indoor live performances at 25% capacity. There was no restriction on the content of the performances.

12.    On December 9, 2020, Mayor Brandon Scott issued an EO closing all live performance venues and re-instituted the ban on on-premise consumption at bars and restaurants.

13.    On December 11, 2020 the Federal Food and Drug Administration issued the first emergency use authorization of a Covid-19 vaccine. The public began receiving the vaccine almost immediately.

14.    On January 21, 2021, Mayor Brandon Scott issue an EO mandating that all live adult entertainment performances would continue to be prohibited. This Order is the first time "adult entertainment" venues were mentioned by name.

15.    On January 28, 2021, Governor Larry Hogan issued EO 21-01-28-01, which allowed for the resumption of indoor live performances, subject to limitation of 50% of maximum capacity or 100 persons.

3

16.     On February 17, 2021, Mayor Brandon Scott issued the current EO allowing for the resumption of all live performances subject to limited capacity. The order states:

> "C. With the exception of adult entertainment facilities, all establishments that offer entertainment and that are otherwise permitted to be open under other provisions of this Order, including but not limited to, bars, nightclubs, social clubs, fraternal orders, and comedy clubs may allow live performances; provided however, all performers must wear a mask while performing and adhere to social distancing requirements. To be clear, if the live performance requires a specific activity that requires the removal of or modification to a mask, that activity is prohibited."

The Order contained no basis for the distinction between adult entertainment and other venues.

## Count One
### Violation of First Amendment

17.     Plaintiff hereby incorporates paragraphs 1 through 16 as if fully set forth herein.

18.     The acts of the Defendant constituted conduct under color of state law which deprived Plaintiff of rights, privileges, and immunities secured by the Constitution and the laws of the United States.

19.     As a direct and proximate result of the conduct alleged herein, the Defendants deprived Plaintiff of the following clearly established rights under the Free Speech Clause of the First Amendment of the United States Constitution, more specifically: guaranteed freedom of expression and the rights of individuals to speak freely.

20.     As a direct and proximate result of the Defendant's violations of Plaintiff's constitutional rights, Plaintiff suffered irreparable harm, including the loss of their constitutional rights, entitling them to prohibitory and injunctive relief.

21.     The First Amendment provides that Congress "shall make no law . . . abridging the freedom of speech." U.S. Const., Amend. I.  The Free Speech Clause of the First Amendment applies to the starts through the Due Process Clause of the Fourteenth Amendment. *Gitlow v. New York*, 268 U.S. 652 (1925).  The First Amendment bars the government from dictating what

4

we see or read or speak or hear. *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002). Expressive conduct is protected by the First Amendment. *See e.g. United States v. O'Brien*, 391 U.S. 367 (1968). Sexual expression which is indecent but not obscene is protected by the First Amendment. *Reno v. ACLU*, 521 U.S. 844 (1997) *see also City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000) (nude dancing enjoys the protections of the First Amendment).

22. Under the Free Speech Clause of the First Amendment, "government entities are strictly limited in their ability to regulate private speech in . . . traditional public fora." *Pleasant Grove City v. Summum*, 555 U.S. 460, 469 (2009) (quotation omitted); *see also Steinburg v. Chesterfield County Planning Comm'n*, 527 F.3d 377, 384 (4th Cir. 2008) ("In the traditional public forum . . . speaker's rights are at their apex.").

23. Although municipalities may impose time, place, and manner restrictions on speech, those restrictions must be "justified without reference to the content of the regulated speech." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). Where a restriction fails this threshold test, the restriction "slips from the neutrality of time, place, and circumstance into a concern about content" and "may be sustained only if the government can show that the [restriction] is a precisely drawn means of serving a compelling interest." *Consol. Edison Co. v. Pub. Serv. Comm'n*, 447 U.S. 530, 536, 540 (1980) (quotation omitted). This standard is known as "strict scrutiny." *See City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 434 (2002) ("If the regulation were content based, it would be . . . subject to strict scrutiny.").

## STANDARD OF REVIEW

24. **The Executive Order is not content neutral and specifically targets adult entertainment venues alone. Therefore, the Court should apply Strict Scrutiny.**

"The principal inquiry in determining content neutrality . . . is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward*, 491 U.S. at 791. The touchstone for this inquiry is whether the regulation is "justified without

5

reference to the content of the regulated speech." *Id.* However, "the mere assertion of a content-neutral purpose [will not] be enough to save a law which, on its face, discriminates based on content." *Turner Broadcasting Sys., Inc. v. FCC*, 512 U.S. 622, 642 (1994). Rather, the Court must "examine[ ] whether the government's content-neutral justification reasonably comports with the content distinction on the face of the regulation." *Clatterbuck v. City of Charlottesville*, No. 12-1149, No. 12-1215, 2013 U.S. App. LEXIS 3651, at *14 (4th Cir. Dec. 5, 2012). This prevents the government from disguising a content-based restriction beneath a content neutral justification. *See Saia v. New York*, 334 U.S. 558, 562 (1948) (recognizing that "[a]nnoyance at ideas can be cloaked in annoyance at sound").

25. Here, strict scrutiny applies because the speech being limited is not content neutral. The EO specifically, and unabashedly targets adult entertainment venues. There is not even an attempt to cloak the EO with any other meaning. All live entertainment is permitted except adult entertainment venues. Indeed, the executive order after eliminating the limit on adult entertainment venues specifically states, "To be clear, live performances at adult entertainment venues are prohibited." No other live entertainment is prohibited under the EO. There can be no legitimate reason for such a targeted prohibition. The speech being limited is not content neutral. As such, strict scrutiny applies.

26. Strict scrutiny requires the government to demonstrate that the EO is designed to serve a substantial government interest and does not unreasonably limit alternative avenues of communication. *Renton v. Playtime Theatres*, 475 U.S. 41 (1986). There are no studies or research to demonstrate that adult entertainment venues generate more risk than other forms of live entertainment. In fact, there is no justification to signal out adult entertainment venues

6

above all other forms of live entertainment other than a puritan interest to close such facilities. As such, there is no substantial government interest at play.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that a temporary and permanent injunction be issued to prevent enforcement of the prohibition on live entertainment at adult entertainment venues, attorneys' fees, plus interest, costs of this suit, and such other and further relief as the Court may find appropriate

Respectfully submitted,

/s/

Ken C. Gauvey (28464)
Law Practice of Ken C Gauvey
7508 Eastern Avenue
Baltimore, MD 21224
410.282.2700
kgauvey@gauveylaw.com

/s/

Joshua Insley (30055)
Saller, Lord, Ernstberger & Insley
12 S Calvert Street
2nd Floor
Baltimore, MD 21202
410.783.7945
jinsley@sallerlaw.com

7